# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| DR.  FRANK RAGOZZINE<br>55 Norwick Drive<br>Youngstown, Ohio 44505<br><br>*Plaintiff*<br><br>v.<br><br>YOUNGSTOWN STATE UNIVERSITY<br>1 University Plaza<br>Youngstown, Ohio  44555<br><br>and<br><br>CYNTHIA E. ANDERSON, Individually<br>and in her official Capacity as<br>PRESIDENT, Youngstown State<br>University<br>1 University Plaza<br>Youngstown, Ohio 44555<br><br>and<br><br>KAREN GIORGETTI, Individually and in<br>her official Capacity as  Chair –<br>Department of Psychology, Youngstown<br>State University<br>1 University Plaza<br>Youngstown, Ohio 44555<br><br>*Defendants.* | CASE NUMBER:_____<br><br>JUDGE:_____<br><br><br><br><br><br><br>**VERIFIED COMPLAINT**<br><br>JURY DEMAND ENDORSED<br>HEREON |

## NATURE OF THE CLAIM

1. This is an action for preliminary and permanent injunctive relief and monetary damages.  Pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.SC. § 1983, The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, et seq. ("FMLA"), and O.R.C. §§4112.02 and 4112.99, Plaintiff challenges the decision of Defendant Youngstown State University, its President and the Chair of its Department of Psychology to deny him tenure (a continuing contract) and promotion.

2. Attorney fees and costs are sought pursuant to Title VII, the FMLA, and 42 U.S.C. §1988.

3. A Declaratory Judgment is sought pursuant to Title 28 U.S.C. §§2201 and 2202.

## JURISDICTION AND VENUE

4. This Court, pursuant to 28 U.S.C. §1331, has federal question subject matter jurisdiction over the primary claims in this case, which are brought pursuant to Title VII (42 U.S.C. §2000e-*et seq.*), the FMLA (29 U.S.C. § 2601, et seq.), and 42 U.S.C. §1983. The Court has supplemental jurisdiction over Plaintiff's state law statutory claims by virtue of Title 28 U.S.C. §1367.

5. Venue is proper in the Eastern Division of the Northern District of Ohio as the acts and omissions or failures to act took place in the City of Youngstown, in Mahoning County, Ohio. Defendant Youngstown State University has its principal place of business in the City of Youngstown in Mahoning County, making venue proper in this Judicial District and Division.

6. Plaintiff has complied with the conditions precedent for bringing an action under Title VII. To-wit: he filed a timely charge of sex discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"); he is eligible to receive, and has requested, a Notice of Right To Sue; and this action is timely filed before the expiration of 90 days of his receipt of the Notice of Right To Sue.

## PARTIES

**PLAINTIFF**

7. Plaintiff Frank Ragozzine ("Plaintiff" or "Dr. Ragozzine") is currently employed by Defendant Youngstown State University as an Assistant Professor of Psychology. He has been employed in this capacity starting August 21, 2006. Prior to coming to Youngstown State University, Dr. Ragozzine was an Associate Professor with tenure at Missouri State University. He gave up both tenure and Associate Professor rank to take a position with Youngstown State University as a tenure track Assistant Professor, a rank below that at which he had previously been employed.

8. Dr. Ragozzine has a Ph.D. in experimental psychology. He holds the position of Assistant Professor in Youngstown State's Psychology Department. Dr. Ragozzine is a Caucasian male and a citizen of the United States.

9. Dr. Ragozzine is qualified for the position he holds and is qualified for the tenure and promotion he was seeking during the 2012-2013 academic year.

10. Dr. Ragozzine is an "employee" of Defendant Youngstown State University within the meaning of 42 U.S.C. §2000e-(f), and Chapter 4112 of the Ohio Revised Code. Dr. Ragozzine is also an eligible employee within the meaning of 29 U.S.C. §2611.

**DEFENDANTS**

**Youngstown State University**

11. Defendant Youngstown State University ("YSU") is an institution of higher education operated by a Board of Trustees appointed on behalf of the State of Ohio.

12. YSU is an employer within the meaning of Title VII, the FMLA and Ohio Revised Code Chapter 4112. YSU acts under color of law.

13. As a public entity in the state of Ohio, YSU is constitutionally required to afford due process and equal protection to, *inter alia*, employees, and *e*qual protection and due process in its hiring, promotion, grants of tenure, discharge, and discipline.

**Cynthia E. Anderson**

14. Defendant Cynthia E. Anderson ("Anderson") is President of YSU. She is a Caucasian Female. Her acts and omissions are taken pursuant to and under color of law. Anderson is an agent of YSU.

15. She is a person within the meaning of 42 U.S.C. §1983 and the final decision-maker in tenure decisions at YSU.

16. Defendant Anderson acts directly in the interest of an employer. She is sued individually and in her official capacity.

**Karen Giorgetti**

17. Defendant Karen Giorgetti ("Giorgetti") is an Associate Professor of Psychology at YSU and has been at all times material to the allegations herein as the Chair of the Psychology Department. Defendant Giorgetti is a Caucasian Female. Giorgetti is an agent of YSU.

18. Defendant Giorgetti acts pursuant to and under color of law, and is a person within the meaning of 42 U.S.C. §1983. She acts directly in the interest of an employer. She is sued individually and in her official capacity.

## STATEMENT OF THE FACTS

19. Dr. Ragozzine began teaching at YSU in the 2006-2007 academic year, as an Assistant Professor on the tenure track. Dr. Ragozzine had and continues to have a constitutionally protected property interest in his employment.

20. Dr. Ragozzine is and has been a teaching professor in the Department of Psychology, in YSU's College of Liberal Arts and Social Sciences. YSU has clearly defined tenure and promotion policies, practices and customs.

21. Dr. Ragozzine requested that his tenure review be postponed for one year due to the serious health problems of his mother and his wife, requiring his attention. The Provost approved Dr. Ragozzine's request.

22. Dr. Ragozzine applied for tenure and promotion during the fall semester of the 2012-2013 academic year rather than during the 2011-2012 academic year, in accordance with the one-year extension granted by the Provost.

23. In this process at YSU, the tenured faculty in the department vote on each candidate for tenure and promotion. After meeting with the tenure applicant and reviewing their tenure file, and the Chair (Giorgetti) makes a recommendation. Any candidate who does not receive a positive tenure recommendation does not go forward for promotion.

24. The tenured faculty members within the Department of Psychology voted on Dr. Ragozzine's tenure application. Four (4) were in favor, and four (4) were against granting tenure to Dr. Ragozzine. Many of the voting faculty members were lobbied in advance of the vote by Dr. Giorgetti to vote against Dr. Ragozzine and were discouraged from asking any questions, which may have affected how they voted.

25. Defendant Giorgetti proposed changes to the Psychology Department rules to allow Dr. Jeffrey Coldren, a member of YSU's Psychology Department, on sabbatical, to vote on Dr. Ragozzine's tenure without being on campus. The rule change failed, but Defendant Giorgetti nonetheless sought Dr. Coldren's opinion on Dr. Ragozzine's tenure application as it was being acted upon, in violation of Article 10.3 of the YSU-OEA Collective Bargaining Agreement. Dr. Coldren was on sabbatical, and because he had not seen Dr. Ragozzine's formal Tenure Application Letter or supporting materials, he was ineligible to vote. On information and belief, Defendant Giorgetti consulted with Dr. Coldren as to his opinion on tenure for Dr. Ragozzine in order to claim that a majority of the Department voted against tenure. In her memo Defendant Giorgetti wrote: "Dr. Coldren's vote is not in the official record, but is noted here to indicate the majority faculty decision."

26. By citing to or relying on Dr. Coldren's opinion, Defendant Giorgetti materially altered the outcome of the decision on Dr. Ragozzine's tenure application, which also resulted in denying his promotion.

27. On information and belief, Dr. Coldren's opinion was not sought in connection with the tenure application of Dr. Julie Boron ("Dr. Boron"), a female. Defendant Giorgetti did not lobby faculty members against Dr. Boron prior to the tenure vote, nor did Dr. Giorgetti comment on Dr. Coldren's opinion in her recommendation of tenure for Dr. Boron.

28. In a letter from Defendant Anderson dated November 9, 2012, Dr. Ragozzine was notified that his application for tenure and a promotion was denied. A corrected letter was sent to him dated November 27, 2012. The reason for denying tenure and promotion given by Defendant Anderson was that Defendant Giorgetti, Department

4

Chair, and Dr. Shearle Furnish, College Dean, did not give Dr. Ragozzine a positive recommendation. Both Defendant Giorgetti and Dr. Shearle Furnish made false statements in their recommendations to deny Dr. Ragozzine tenure. Defendant Anderson concurred with Defendant Giorgetti and Furnish.

29. At various times during the tenure process, including during the evaluations, Defendant Giorgetti knowingly made false and misleading negative statements about Dr. Ragozzine and knowingly omitted important and relevant positive information and statements.

30. Defendant Giorgetti's willful misrepresentation of Dr. Ragozzine's accomplishments portrayed him in a negative light to the Dean, Provost and President, all of whom relied heavily on Defendant Giorgetti's opinions when making decisions to grant or deny tenure.

31. In contrast, there was no such inclusion of negative information or omission of positive information included in Defendant Giorgetti's comments regarding the performance of Julie Boron.

32. The inclusion of negative information in Defendant Giorgetti's comments, without giving Dr. Ragozzine the opportunity to address this negative information, is specifically prohibited in the YSU-OEA Collective Bargaining Agreement, Article 17.6.

33. Relying on statements by Defendant Giorgetti rather than on objective data, Dean Furnish also made false statements in Dr. Ragozzine's recommendation.  For example, the Dean stated that "...'in press' does not mean 'published'."

34. The department governance document states that "in-press" means published, as long as there is a supporting statement from the journal editor.

35. The Dean also held Dr. Ragozzine's extension against him, misstating the amount of time he had within which to apply for tenure.

36. Dr. Ragozzine timely applied for tenure within the University guidelines and the extension which he was granted.

37. On November 27, 2012, YSU informed Dr. Ragozzine that his "…employment with Youngstown State University will end on May 14, 2013, with the expiration date of [his] present contract."

38.  At the same time as Dr. Ragozzine's tenure review, a female tenure track professor, Dr. Boron, was granted tenure and a promotion. Defendants used different standards in granting tenure to Dr. Boron, deviating from their usual and customary practices.

39. Dr. Ragozzine was treated less favorably by the female department chair than the treatment given to Dr. Ragozzine's female comparator, Dr. Boron. She was awarded

5

tenure and a promotion despite having less teaching experience and fewer peer-reviewed journal articles, which are the primary indicator of scholarship.

40. Dr. Ragozzine appealed his denial of tenure under the procedures available to faculty at YSU.

41. A YSU Tenure Appeal Committee was designated and convened to review the denial of Plaintiff's tenure. The appeal process included meeting with Dr. Ragozzine and hearing his presentation and responding to the committee's questions. On February 15, 2013 the Tenure Appeal Committee <u>unanimously found that Dr. Ragozzine had been wrongfully denied tenure.</u> Included in the Tenure Appeal Committee review was a citation to the failure of the department, for which Defendant Giorgetti is responsible, to follow the governance policy for and adopted by the Department of Psychology under YSU rules.

42. The Tenure Appeal Committee stated that they were "...mystified as to why the Department of Psychology made the decision to deny tenure...", and further added that, with respect to the governance document, "In Dr. Ragozzine's case, for whatever reason, he appears to have been held to some different standard."

43. After requesting a delay in issuing her decision, on March 5, 2013, University President, Defendant Cynthia Anderson, citing *inter alia* the opinion of the Department Chair, Defendant Giorgetti, rejected the Tenure Appeal Committee decision and denied Dr. Ragozzine tenure.

44. The actions of Defendant Giorgetti and Defendant Anderson were taken under the color of law. Their actions were in willful disregard of Dr. Ragozzine's well established rights to due process and equal protection in the tenure granting process of a state institution of higher education.

45. Defendants' decision denying Plaintiff tenure and a promotion was discriminatory and based on sex, and violated Plaintiff's rights to due process and equal protection.

46. As a result of Defendants' actions, described herein, including the loss of a tenured teaching position with YSU Dr. Ragozzine has suffered and will continue to suffer emotional distress.

## STATEMENT OF LEGAL CLAIMS

### COUNT ONE
SEX DISCRIMINATION IN VIOLATION OF TITLE VII (42 U.S.C. §2000e-e*t.seq*)
AND O.R.C. §§4112.02 AND 4112.99[1]

47. Plaintiff hereby incorporates by reference all prior paragraphs in this Complaint, as if fully restated herein.

---

[1] This count is against Defendant Youngstown State University.

48. The acts and omissions of Defendant YSU, set forth above, failed and refused to grant Plaintiff the same terms and conditions of employment as Defendant gave to a female comparator.

49. The acts and omissions of Defendant YSU, set forth above, discriminated against Plaintiff because of his gender: male, in violation of Title VII and violated Chapter 4112.

50. The acts and omissions of Defendant YSU, set forth above, violate Title VII, are unlawful and have caused and will continue to cause injury to Plaintiff.

51. The acts and omissions of Defendants, set forth above, caused Plaintiff to suffer monetary and non-monetary injuries, including a loss of tenure, promotion, wages and benefits and causing him to suffer emotional distress.

## COUNT TWO
ORC §4112.99 and 42 U.S.C. §1983[2]

52. Plaintiff hereby incorporates by reference all prior paragraphs in this Complaint, as if fully restated herein.

53. 42 U.S.C. §1983 provides: "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State …subjects, or causes to be subjected, any citizen of the United States … to the deprivation of any rights, privileges or Immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, Suit in equity, or other proper proceeding for redress,…."

54. ORC §4112.99 provides that a civil action may be brought against any person who violates this chapter.  Under this chapter any agent of an employer may be held liable for violations of Chapter 4112.

55. The acts and omissions of Defendants Anderson and Giorgetti deprived Plaintiff of rights, privileges and immunities secured to him by the 14th Amendment to the Constitution of the Unites States and by Title VII of the Civil Rights Act of 1964.

56. Dr. Ragozzine's right to due process and equal protection in the tenure process is well established.  The acts and omissions of Defendants Anderson and Giorgetti, set forth above, were taken under color of state law, were willful and/or taken in reckless disregard of Dr. Ragozzine's constitutional rights, and denied Plaintiff due process and equal protection of the law and were in disregard of well established rights.

57. Defendant Giorgetti's solicitation and consideration of the opinion of a faculty member who was not eligible to vote denied Plaintiff of both due process and equal protection.  Defendant Giorgetti, as an agent of an employer, used her position to violate Plaintiff's rights under ORC Chapter 4112 and 42 U.S.C. § 1983.

---

[2] This count is against Defendants Karen Giorgetti  and Cynthia E. Anderson

58. Defendant Anderson, as an agent of the employer, failed to exercise her supervisory authority over Defendant Giorgetti and failed to act in accordance with the lawful procedures available to Plaintiff to prevent a violation of ORC Chapter 4112 and 42 U.S.C.§ 1983, thereby acting in reckless disregard of and contributing to the violation of Plaintiff's rights.

59. The acts and omissions of the individual Defendants, set forth above, violate the 14th Amendment to the Constitution of the United States and Title 42 U.S.C. §1983, are unlawful, and have caused and will continue to cause injury to Plaintiff.

60. The acts and omissions of the individual Defendants were done in reckless disregard of Plaintiff's rights, set forth above, and deprived Plaintiff of a property interest without due process and were knowingly done in contravention of Plaintiff's legally guaranteed rights.

61. The acts and omissions, and the failures and refusals to act of the individual Defendants, set forth above, treated Plaintiff differently because of his sex causing Plaintiff to suffer monetary and non-monetary injuries, including a loss of tenure, promotion, wages and benefits, and causing him to suffer emotional distress.

## COUNT THREE
RETALIATION
FMLA – 29 U.S.C. § 2601, et seq.[3]

62. Plaintiff hereby incorporates by reference all prior paragraphs in this Complaint, as if fully restated herein.

63. The FMLA entitles eligible employees who are employed by a Covered employer to take up to twelve (12) weeks of Leave to, *inter alia,* care for a sick parent or spouse with a serious health condition.  This Leave can be with or without pay, continuous or intermittent.

64. 29 C.F.R. § 825.220(c) provides that an employer, in this case Defendant YSU, is prohibited from discriminating against an employee who has used FMLA leave.

65. Dr. Ragozzine took intermittent FMLA leave and worked a reduced schedule so he could care for his mother and spouse. Because caring for severely ill family members consumed time that Dr. Ragozzine would have otherwise been able use for scholarly production, he sought and was granted an additional year within which to apply for tenure and to obtain the acceptance of scholarly articles for publication required for tenure. Defendant Giorgetti verbalized her disapproval of the timing of Dr. Ragozzine's publications, complaining that it took over six (6) years to produce them. Although Dr. Ragozzine had 4 peer-reviewed publications, Defendant Giorgetti falsely stated that, "...after over six years in probationary status...Dr. Ragozzine has not published a single article."

---

[3] This count is against only Defendant Youngstown State University.

66. Because Dr. Ragozzine was granted additional time to seek tenure and a promotion, Defendants held him to a higher standard than was applied to Julie Boron, and expected more from him than was expected from Julie Boron. The Defendants also held Dr. Ragozzine to a higher standard regarding requirements for tenure than is stated in either the YSU-OEA Collective Bargaining Agreement or the Psychology Department's Governance Document, or the rules, regulations, or policies of YSU.

67. Imposing higher expectations on Dr. Ragozzine because of his FMLA leave subjects him to an adverse job action in retaliation for his taking leave and violates his rights under the FMLA, and is contrary to YSU's Collective Bargaining Agreement which prohibits leaves from being counted against a tenure decision.

68. On information and belief Defendant Giorgetti attempted to have the Provost reverse his decision granting leave to Dr. Ragozzine, and falsely claimed to the Provost that she knew nothing about Dr. Ragozzine's request for an extension.

69. Dr. Ragozzine emailed the same letter discussing his wife's and his mother's health issues and requesting an extension to both the Provost and Giorgetti on the same day.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays this Honorable Court:

    A.  Issue a preliminary and permanent injunction prohibiting Defendant YSU and the individual Defendants in their official capacity from terminating Plaintiff effective May 14, 2013 or at the conclusion of a terminal contract for the 2113-2114 academic year;

    B.  Issue a preliminary and permanent injunction prohibiting Defendant YSU and the individual Defendants in their official capacity from abridging the rights of Plaintiff, including a non-retaliation provision;

    C.  Issue a declaratory judgment finding that the acts and omissions of Defendants as set forth herein violate Plaintiff's rights under Title VII, FMLA, ORC 4112 and §1983 and specifically prohibiting retaliation;

    D.  Issue a preliminary and permanent injunction requiring Defendant YSU and the individual Defendants in their official capacity to grant Plaintiff tenure with a concomitant promotion;

    E.  Grant Plaintiff (re)instatement with or without back pay;

    F.  Order Defendant YSU and the individual Defendants in their official capacity to put Plaintiff in his "rightful place", including a grant of tenure and promotion;

    G.  Make Plaintiff whole with appropriate back pay, front pay, benefits, and compensatory damages;

H. Grant Plaintiff pre-judgment and post-judgment interest on the amounts awarded as allowed by law;

I. Award Plaintiff punitive damages against the individual Defendants in their individual capacity;

J. Award Plaintiff costs and reasonable attorney fees; and

K. Grant such other relief as is necessary to make Plaintiff whole.

Respectfully submitted,

*s/ Bruce B. Elfvin*
Bruce B. Elfvin (0015694)
bbe@elfvinbesser.com
Barbara Kaye Besser (0017624)
bkb@elfvinbesser.com
Stuart Torch (0079667)
stuart.torch@elfvinbesser.com
ELFVIN & BESSER
4070 Mayfield Road
Cleveland, Ohio 44121-3031
216.382.2500 (voice)
216.381.0250 (facsimile)

Attorneys for Plaintiff Frank Ragozzine

## JURY DEMAND

Plaintiff demands a trial by jury on all claims that may be so tried.

*s/ Bruce B. Elfvin*
One of the attorneys for Plaintiff

## VERIFICATION

STATE OF OHIO )
) SS:
COUNTY OF CUYAHOGA )

I, Frank Ragozzine, being first duly sworn according to law, deposes and says as follows:

1. I am the Plaintiff in the above-captioned civil action;

2. I made this statement based on my own personal knowledge;

3. I have read foregoing Verified Complaint. With respect to the factual allegations and statements of fact contained in the Verified Complaint they are true and accurate to the best of my knowledge, information, and belief.

FURTHER AFFIANT SAYETH NAUGHT.

_____
Frank Ragozzine, Plaintiff

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 4th DAY OF April, 2013.

_____
Notary Public - State of Ohio/

[My Commission has no expiration date]
/

/

/

/