PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DR. FRANK RAGOZZINE, ) | |
| ) | CASE NO. 4:13cv750 |
| Plaintiff, ) | |
| ) | |
| v. ) | JUDGE BENITA Y. PEARSON |
| ) | |
| YOUNGSTOWN STATE UNIVERSITY, *et* ) | |
| *al.*, ) | |
| ) | **MEMORANDUM OF OPINION AND** |
| Defendants. ) | **ORDER** [Resolving ECF Nos. 66; 67] |

Plaintiff was denied tenure. He filed a lawsuit alleging that discriminatory and other illegal actions by named Defendants caused the denial. Defendants moved for summary judgment. After reviewing the briefs and hearing oral argument, the Court granted the motion and dismissed Plaintiff's case. Plaintiff now moves for disqualification because, he alleges, there was an appearance of the Court's partiality caused by a personal relationship the Court had with a tenured full professor at Youngstown State University ("YSU") during the pendency of his litigation.[1] For the reasons that follow, Plaintiff's motion to disqualify the judge is denied; his motion to vacate prior rulings is denied; and his motion for extension of time is denied.

**I. Applicable Legal Standards**

The conduct of federal judicial officers is governed by Code of Conduct for United

---

[1] Pending are Plaintiff's Motion to Disqualify Judge and for Relief from Judgment, ECF No. 66, and Motion for Extension of Time to file Notice of Appeal until April 25, 2014, ECF No. 67.

(4:13cv750)

States Judges. *See* Code of Judicial Conduct for United States Judges.  The advice imparted is organized in Canons.  Canons are rules of reason.  They should be applied consistently with constitutional requirements, statutes, other court rules and decisional law, and in the context of all relevant circumstances.  The Code is to be construed so it does not impinge on the essential independence of judges in making judicial decisions.  *Id*.

Canon 2A instructs that a judge should avoid impropriety and the appearance of impropriety in all activities.  *Id*.  "An appearance of impropriety occurs when reasonable minds, with knowledge of all the relevant circumstances disclosed by a reasonable inquiry, would conclude that the judge's honesty, integrity, impartiality, temperament, or fitness to serve as a judge is impaired."  *Id*., Commentary 2A.  Canon 2B cautions that a judicial officer should not allow relationships, including, family, social, political, financial, or other relationships to influence judicial conduct or judgment.

Canon 3 directs that a judge should perform the duties of the office fairly, impartially and diligently.  It further instructs that a judge shall disqualify herself in a proceeding in which the judge's impartiality might reasonably be questioned.  *Id*., Canon 3(C)(1).  That same canon mandates that "[a] judge should hear and decide matters assigned, unless disqualified."  *Id*., Canon 3(A)(2).

The decision of whether to recuse lies within the discretion of the trial judge.  *United States v. Wilensky*, 757 F.2d 594, 599–600 (3d Cir. 1985).[2]  There are two federal statutes that

---

[2] In fact, the undersigned has recused in at least two other cases.  *See Eikleberry v Commissioner of Social Security*, No. 5:09CV2286 (N.D. Ohio filed Jan. 24, 2011), and *Krug v. Pearson*, No. 4:13CV1085 (N.D. Ohio filed May 13, 2014).

2

(4:13cv750)

dictate the circumstances under which a federal judge should recuse.  Plaintiff cites only one.[3]

Section 455(a) of Title 28 of the United States Code provides in pertinent part that "[a]ny justice, judge, or magistrate [judge] of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."  28 U.S.C. § 455(a).  When reviewing motions for recusal, the  Sixth Circuit has held that § 455(a) requires recusal "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality."  *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990); *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 861-63 (1988); *Liteky v. United States*, 510 U.S. 540, 548 (1994).  However, "a federal judge has a duty to sit where not disqualified which is equally as strong as the duty to not sit where disqualified."  *Laird v. Tatum*, 409 U.S. 824, 837 (1972).

## II.  Discussion

### A.

Plaintiff asserts that the undersigned's personal affiliation with a professor at YSU is such that my impartiality might reasonably be questioned.  In support of his contention, he declares:

---

[3] Motions for recusal are also governed by Section 144 of Title 28 of the United States Code.  Recusal under 28 U.S.C. § 144 is mandatory "[w]henever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party."  28 U.S.C. § 144.  The Court presumes that Plaintiff is aware of this statute and thought it inapplicable given that neither declaration offered in support of the motion to disqualify claims actual bias or prejudice.  *See e.g.* ECF No. 66-2 at ¶13 ("[t]o be very clear, I have no knowledge of any actual bias or prejudice toward Plaintiff by the Court.")

3

(4:13cv750)

- Prior to the Court issuing a dispositive ruling in his case, he had heard a rumor that the undersigned was seen "at some university sponsored events" with Dr. Wan-Tatah, the other professor;

- After the undersigned issued the adverse ruling, his counsel verified the rumor;

- Because the professor is "not actively involved in the bargaining unit at YSU," Plaintiff "assume[s] that the professor's sympathies lie with University's administration";

- Plaintiff taught a class and gave a poor grade to a student whom Plaintiff believes is a close family relative of the other professor;

- Plaintiff does not know the other professor and has no "direct knowledge" that the undersigned and professor have discussed his case;

- Had he known the above information, Plaintiff would have asked that the case be assigned to another judge.

ECF No. 66-1 at 1-2.

Plaintiff's counsel's declarations mimic Plaintiff's, adding only that counsel has "no knowledge of any actual bias or prejudice toward Plaintiff by the Court." ECF No. 66-2 at 3, ¶12.

Until his motion to disqualify, Plaintiff pinned, as offenders against him, only the named parties and the tenured faculty in his department. Now, he has brought within his scope the entire College of Liberal Arts and Social Sciences, which has nine departments and a total of 242 faculty members, approximately 121 of whom are tenured.[4] Professor Wan-Tatah is a tenured member of a department different from Plaintiff's. He is not named in the lawsuit. Professor Wan-Tatah did not participate in the decision to deny Plaintiff tenure. Moreover, Plaintiff does

---

[4] *See* http://www.ysu.edu/ (YSU main page); http://web.ysu.edu/class (College of Liberal Arts and Social Sciences website) (last visited, March 20, 2014).

(4:13cv750)

not allege that he knows or has ever interacted with Professor Wan-Tatah.[5]

There is, understandably, only one dean for the entire College. He too is not a named party.

The day before Plaintiff filed his motion, his counsel called the Court, with opposing counsel on the line, and the Court held a telephone conference. March 10, 2014 *Minutes of Proceedings*. During the telephone conversation with counsel, the Court acknowledged a relationship with a professor at YSU and denied any impropriety, bias, prejudice, or appearance thereof. The Court maintains that position herein. The undersigned also stated that she never discussed this case with anyone outside of the parties and her staff prior to Plaintiff's allegations.[6] The undersigned's association with Professor Wan-Tatah did not obligate her to act or to forebear acting in any way at any time.

**B.**

The standard for recusal is whether, under the circumstances of this case, a reasonable, objective person knowing all the circumstances would have questioned the Court's impartiality. *See Easley v. Univ. of Michigan Bd. of Regents*, 906 F.2d 1143, 1146 (6th Cir. 1990). Informed

---

[5] The possibility of Plaintiff having had a relative of Professor Wan-Tatah's in one of his classes is not relevant to his motion. The undersigned is not aware of any circumstance regarding this allegation. Moreover, YSU is a state university with approximately 15,000 students. For the sake of providing a complete response, the undersigned offers the following analogous advice: "if a judge is *not aware* that a party, law firm, or attorney in a proceeding before the judge has a business relationship with spouse's business, the judge's impartiality could not reasonably be questioned." Advisory Opinion No. 90, p. 107-6 (emphasis added).

[6] Since the allegations, the undersigned consulted an ethics professional employed by the Administrative Office of the United States Courts.

(4:13cv750)

as Plaintiff and his counsel were prior to the filing of the motion to disqualify—that the undersigned had no connection with any persons having knowledge about this case other than the litigants—the undersigned finds that there is no basis upon which a reasonable, objective person knowing these same facts would question the undersigned's impartiality.  More to the point, it is difficult to conclude, based on the existing facts,[7] that the Court's association with another professor at YSU would make it *appear* more or less likely that the Court would rule in favor of Defendants.  The logical implication of Plaintiff's argument is that the undersigned should recuse if she has a relationship of almost any kind with almost anyone associated with the university.  This argument is aptly belied by the Compendium[8] to Advisory Opinion No. 107 (Judge's Recusal Due to a Spouse's Business Relationships) which states, "a spouse's employment as a

---

[7] Defendants subtly invite the Court to reveal any additional facts—disclosures "beyond what Ragozzine has raised"—should they exist.  ECF No. 69 at 6.  There are no such facts to be disclosed.  Plaintiff's strained averments create the bank of data necessitating the discussion herein.

[8] The Compendium is an internal resource for judges and employees.  Because the Court finds it helpfully analagous and it is not easily accessible to the public, the complete quote of the relevant section, 3.2-2, follows:
> (f) Employment of a judge's spouse as a program coordinator in the state office of Substance Abuse does not require recusal in all cases in which the state is a party, only those in which the spouse was personally involved in any way or which involved the particular government entity the spouse works for.  Similarly, a spouse's employment by a city library does not disqualify the judge from matters involving the city; same for matters involving the library, unless the spouse is personally involved or could be substantially affected by the matter.  *Similarly, spouse's employment as a university professor does not disqualify the judge from all matters involving the university.* (Emphasis added.)

*See* http://jnet.ao.dcn/policy-guidance/guide-judiciary-policy/volume-2-ethics-and-judicial-conduct/part-b-ethics-advisory-opinions/ch-3-compendium-selected-opinions (last visited, March 20, 2014).

6

(4:13cv750)

university professor does not disqualify the judge from all matters involving the university."[9] *See also Easley*, 906 F.2d at 1145 (ruling the judge's graduation from a particular law school, and his sons' affiliations with that school, alone is an insufficient basis for recusal); *Amaechi v. Univ. of Ky.* No. 09-118-KSF, 2010 WL 2559080, at * 2 (E.D.Ky. June 21, 2010) (same).

### C.

Section 455(a) must not be so broadly construed that recusal is mandated upon the merest unsubstantiated suggestion of an appearance of impropriety, personal bias or prejudice. *Tonkovich v. Kansas Bd. of Regents,* 924 F.Supp.1084,1087 (D. Kan. 1996) (finding recusal not required by circumstances including connections of circuit, district and magistrate judges to law school). "The statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice." *Id.* at 1087 (citing *U.S. v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993)).

It cannot go unsaid that, based on the facts originally argued and Plaintiff's knowledge, the timing of the motion to disqualify is specious. Apparently, prior to the issuance of the adverse ruling, Plaintiff had not attached the significance he does now to the undersigned's association with another professor at YSU.[10] Plaintiff said nothing— to his counsel, the Court or opposing counsel—until the Court issued its ruling. The timing of the motion strongly suggests

---

[9] The advisory opinions are on the public website, uscourts.gov, http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/RulesAndPolicies/conduct/Vol02B-Ch02.pdf. (last visited, March 20, 2014).

[10] The undersigned certainly does not now nor did she prior to ruling believe there was an impropriety or the appearance thereof.

(4:13cv750)

that Plaintiff was not concerned about an appearance of impropriety until the adverse ruling.

Had the undersigned been afforded the opportunity, before issuing the ruling, she would have acknowledged the association and explained why, viewing all relevant circumstances, the allegations did not raise a reasonable appearance of partiality, bias or other basis for disclosure or recusal. Taken as a whole, the allegations of Plaintiff, including the embellishment of now purportedly relevant facts, are more likely to suggest to a reasonable person that Plaintiff is shopping for a different judge and/or a different result, rather than appealing to the U.S. Court of Appeals. *See e.g.,* H.R. REP. NO. 93–1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355 ("in assessing the reasonableness of a challenge to his impartiality, each judge must be alert to avoid the possibility that those who would question his impartiality are in fact seeking to avoid the consequences of his expected adverse decision.").

That said, the specious timing does not obviate the undersigned's sworn obligation to promote public confidence in the integrity of the judicial process; to serve when able; and, as importantly, to disqualify herself when appropriate. As the parties acknowledge, the decision to disqualify should not be made lightly. It is a serious decision that deserves somber contemplation. Having conducted that contemplation, I refuse to disqualify myself. A judge has an obligation to recuse herself when there is good reason to do so. She has an equal obligation not to recuse herself when there is no reason to do so. There is no impropriety justifying disqualification in the case at bar. In my humble opinion, no reasonable, objective person viewing the relevant circumstances would reach a different conclusion.

The motion to disqualify is denied.

8

(4:13cv750)

### D.

Because there is no basis for disqualification, the motion to vacate the prior rulings is denied.  A motion to recuse a federal judge under 28 U.S.C. 455(a) is subject to the limitation known as the "extrajudicial source" doctrine, *Liteky*, 510 U.S. at 554-55, and judicial rulings alone rarely constitute a valid basis for a motion for disqualification for bias or partiality.  *Id*. at 555.

### E.

Because Rule 4(a)(4)(A)(vi) of the Federal Rules of Appellate Procedure relieves compression caused by a Fed. R. Civ. P. 60(b) motion, there is no legitimate basis for the 30-day extension of time requested by Plaintiff.  For this reason the motion for extension of time is denied.

### III.  Conclusion

For the reasons expressed above, Plaintiff's motions (ECF No. 66; 67) are denied.

IT IS SO ORDERED.

   March 20, 2014                                      */s/ Benita Y. Pearson*
Date                                                  Benita Y. Pearson
                                                              United States District Judge